1

2

3

4

5

6

7

8

9

10

THE HONORABLE RICARDO MARTINEZ
HEARING DATE: DECEMBER 16, 2005
(WITHOUT ORAL ARGUMENT)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

11

LISA MILLER,

12

Plaintiff,

13

14

v.

15

THE UNITED STATES OF AMERICA;
ALASKA AIRLINES, INC.; MARLATT
FUNERAL HOME; and DOES 1 through 10
inclusive;

16

17

18

Defendants.

NO.  C04-2307 RSM

MARLATT MORTUARY, INC.'S
MOTION FOR SUMMARY
JUDGMENT

19

FACTS

20

        This case involves the transportation of cremated human remains from the Seattle area

21

to San Diego, California.  Plaintiff, Lisa Miller, claims that defendant, Marlatt Funeral Home

22

("Marlatt"), failed to provide adequate documentation to allow her to travel with the cremated

23

24

remains.  Plaintiff further claims that as a result of the alleged inadequate documentation her

25

luggage was searched improperly by defendant United States of America through the

MARLATT MORTUARY, INC.'S MOTION
FOR SUMMARY JUDGMENT- 1

LAW OFFICES OF KEITH M. KUBIK

1101 Bank of America Tower • 701 Fifth Avenue
Seattle • WA • 98104
Tel. 206.587.2647 • Fax 206.587.2648

1   Transportation Security Administration.  This search, she alleges, resulted in the plastic

2   receptacle containing the remains being opened.  After the death of Charles Mason, a distant

3   relative of plaintiff, she informed Marlatt that she intended to take the remains from Seattle to

4

5   San Diego.  Marlatt did not transport the remains nor did it have any involvement in handling

6   the remains after they were picked up by plaintiff.

7           Plaintiff alleges that on March 29, 2003, she gave the urn containing the cremated

8   remains to co-defendants Alaska Airlines and/or the Transportation Security Administration

9   (U.S.A) upon arrival at Seatac Airport.  Plaintiff further alleges that the urn was opened and

10  that the contents were partially spilled inside her luggage.

11

12          Marlatt packaged the remains consistent with proper industry practice by sealing the

13  bag containing the remains before sealing the urn.  Additionally, Marlatt affixed a label that

14  stated as follows:

15                              Marlatt Crematory
                                713 N. Central Ave. N.
16                              Kent, WA 98022
                                (253) 852-2620
17

18              We hereby certify that the enclosed cremated remains are those of:
                Charles Augustus Mason, Jr.
19              Whose remains were cremated on March 26, 2003

20                              By order of:
                            MARLATT FUNERAL HOME
21                          Our registration # 5923-488
                            Crematory representative
22                          _____/s/_____
                                1 of 1
23

24          Marlatt also provided plaintiff with multiple copies of the death certificate for Charles

25  Augustus Mason and copies of all other pertinent documentation.

MARLATT MORTUARY, INC.'S MOTION
FOR SUMMARY JUDGMENT- 2

Plaintiff's sole allegation against Marlatt is that Marlatt failed to provide her with a written permit to transport the body.  Plaintiff alleges that had Marlatt provided such a permit that it would have "served to assist in the harm caused to Plaintiff." (Complaint #19).

<u>PLAINTIFF'S DEPOSITION TESTIMONY</u>

Plaintiff's deposition was taken on September 9, 2005.  During her deposition plaintiff was asked the following questions and provided the following responses:

**Page 120:**

4   Q.  When you arrived at Marlatt on the day that you

5   did -- I don't know if I have an exact date with me, but a

6   day or so before you left for San Diego -- tell me the

7   content of the discussions that you had with the folks at

8   Marlatt about what you were going to be doing.

9      A.  I gave them the Power of Attorney and stuff that

10  had the little paper that my mom -- that introduced me.  And

11  I asked them, "What else do I need?  Because we have this

12  bereavement fare.  It's only because we're transporting the

13  remains to get on the plane.  What else do we need?"  They

14  got me a copy of the death certificate because it wasn't the

15  certified one yet.  And that was basically our conversation.

16     Q.  And so they provided you with the death

17  certificate?

18     A.  Uh-huh.

MARLATT MORTUARY, INC.'S MOTION
FOR SUMMARY JUDGMENT- 3

LAW OFFICES OF KEITH M. KUBIK

1101 Bank of America Tower • 701 Fifth Avenue
Seattle • WA • 98104
Tel. 206.587.2647 • Fax 206.587.2648

19   Q.   Did they provide you at that time with a copy of

20   the two-page document that we looked at earlier?

21   A.   Yes.  And the invoice.

22   Q.   So you had all of those documents?

23   A.   Yes.

24   Q.   And they also gave you the urn, which was the black

25   urn that we looked at earlier?

**Page 121:**

1   A.   Yes.

2   Q.   And on that urn was a sticker that indicated that

3   it was the cremated remains of Charles Mason?

4   A.   Yes.

**Page 128:**

19   Q.   Would you agree with me that you and I are capable

20   of looking at that urn and at least recognizing that there

21   were cremated remains inside based on the labeling on the

22   outside, correct?

23   A.   Yes.

24   Q.   There is really a single allegation against my

25   client.  And that allegation is that there was an additional

**Page 129:**

1   permit that could have been given to you that could have

MARLATT MORTUARY, INC.'S MOTION
FOR SUMMARY JUDGMENT- 4

2   somehow made a difference.  And putting aside the legal

3   aspects of that, this is the question I have for you.

4        If my client would have handed you a piece of paper

5   other than the pieces of paper that they handed you, would

6   you not just have put it in the same envelope that you put

7   the other stuff in?

8      A.  Yes.

9      Q.  And nobody at Alaska Airlines asked you for that

10   envelope?

11     A.  No one.

12     Q.  And nobody at the TSA asked you for that envelope?

13     A.  No one.

14     Q.  And even though you didn't think you had to, you

15   didn't offer it to anyone at the airport, did you?

16     A.  No.

17     Q.  You would agree with the statement in one of your

18   emails that the urn was clearly labeled, correct?

19     A.  Yes.

**Page 132:**

23   Q.  You said you had an envelope with the documentation

24   in it.

25        Where was that?

LAW OFFICES OF KEITH M. KUBIK

1101 Bank of America Tower • 701 Fifth Avenue
Seattle • WA • 98104
Tel. 206.587.2647 • Fax 206.587.2648

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Page 133:**

1    A.  It was -- I believe I had my purse, so it was in my

2  purse.

Under questioning by Caryn Jorgensen, counsel for Alaska Airlines:

**Page 43:**

22   Q.  And you don't remember telling the Alaska Airlines

23  person, I have urns in my backpack, what do I do with them?

24    A.  Well I didn't think that was necessary since they

25  knew the purpose of my trip.  And since they knew the

**Page 44:**

1  purpose of my trip -- that was the main purpose of my

2  trip -- then they should have instructed me what to do.

3    Q.  My question is:  Did you tell an Alaska Airlines

4  representative, I have an urn in this piece of luggage?

5    A.  No.  I didn't tell them that I have an urn in this

6  piece of luggage.

**Page 45:**

22   Q.  Did you tell any of the TSA representatives that

23  one of your bags contained human remains?

24    A.  No.

Under questioning by Priscilla Chan counsel for U.S.A.:

**Page 98:**

MARLATT MORTUARY, INC.'S MOTION
FOR SUMMARY JUDGMENT- 6

LAW OFFICES OF KEITH M. KUBIK

1101 Bank of America Tower • 701 Fifth Avenue
Seattle • WA • 98104
Tel. 206.587.2647 • Fax 206.587.2648

8   Q.   When you were talking to the Alaska agent at the

9   ticket counter, did you ever ask whether or not the contents

10   in the backpack would be disrupted if you checked it in?

11      A.   No.

12      Q.   And did you ask either an Alaska agent or a TSA

13   agent the risks, if any, to the contents of your backpack if

14   it left your possession?

15      A.   No.

**Page 100:**

7   Q.   When you brought your backpack over to the TSA

8   station, who did you hand it over to?

9      A.   To the TSA agent.

21      Q.   Did you ask him any questions or talk to him?

22      A.   No.

**Page 101:**

24      Q.   So did you give the TSA agent or the agent at the

25   TSA station any kind of documentation whatsoever to show

**Page 102:**

1   that you were giving him a backpack with human remains in

2   it?

3      A.   No.  But the documentation was on the container.

6   Q.   So you didn't give him any pieces of paper

MARLATT MORTUARY, INC.'S MOTION
FOR SUMMARY JUDGMENT- 7

7   separately that stated that there was any human remains in

8   the backpack, correct?

9      A.  No one ever asked me for anything.

10     Q.  Is that correct?

11     A.  That's correct.

12     Q.  Okay.  We talked about labels and any physical

13  documents.

14        Did you say anything verbally to the agent at the

15  TSA station about the presence of any human remains in the

16  backpack?

17     A.  At the Seattle airport?

18     Q.  Yes.

19     A.  No.

## LEGAL ARGUMENT

A cause of action for negligence requires the plaintiff to show (1) that the defendant owed a duty to the plaintiff, (2) breach of that duty, (3) an injury , and (4) a proximate cause between the breach and the injury.  Travis v. Bohannon, 128 Wn.App. 231, _, 115 P.3d 342 (2005).  In this case, based on plaintiff's own testimony, there is no proximate cause for her alleged injury.  Plaintiff alleges in her complaint that the failure of Marlatt Funeral Home to provide her with a permit somehow enhanced the chances that she would suffer an injury.

However, it is undisputed that Marlatt provided a death certificate for Charles Augustus Mason.  It is undisputed that plaintiff was provided with a two-page invoice outlining the fact

MARLATT MORTUARY, INC.'S MOTION
FOR SUMMARY JUDGMENT- 8

LAW OFFICES OF KEITH M. KUBIK

1101 Bank of America Tower • 701 Fifth Avenue
Seattle • WA • 98104
Tel. 206.587.2647 • Fax 206.587.2648

1   that Marlatt Funeral Home had cremated the earthly remains of Mr. Mason.  It is also

2   undisputed that the identifying permit on the urn itself identified the fact that the urn contained

3   the cremated remains of Charles Augustus Mason, Jr.

4   Ms. Miller testified that even if Marlatt Funeral Home had provided her with an

5   additional permit[1] she would have placed it with all of her other paperwork related to Mr.

6
7   Mason's death, cremation and transportation.  Ms. Miller further testified that no representative

8   of Alaska Airlines or the Transportation Security Administration ever asked her for any

9   documentation.

10          Finally, and most striking, is the fact that Ms. Miller testified she did not offer any

11   documentation to anyone at Seatac Airport.

12          Ms. Miller also testified that the urn was clearly labeled as containing the cremated

13   remains of Charles Augustus Mason, Jr.

14          Admittedly, the issue of proximate cause is usually a question for the trier of fact.

15
16   Levea v. G.A. Gray Corp. 17 Wn.App. 214, 219, 562, P.2d 1276 (1977).  However, the

17   existence (or non-existence) of proximate cause may be determined as a matter of law if

18   reasonable minds could not differ.  Hertog v. City of Seattle, 138 Wn. 2d 265, 282, 979 P.2d

19   400 (1999).

20          In this case, Marlatt Funeral Home provided plaintiff with all necessary documentation

21
22   to transport the cremated remains of Mr. Mason to California.  Even if, as plaintiff alleges,

23   Marlatt failed to provide an additional permit nothing different would have happened.  Plaintiff

24

25

---

[1] Marlatt Funeral Home specifically denies that any such permit was required.

MARLATT MORTUARY, INC.'S MOTION
FOR SUMMARY JUDGMENT- 9

LAW OFFICES OF KEITH M. KUBIK

1101 Bank of America Tower • 701 Fifth Avenue
Seattle • WA • 98104
Tel. 206.587.2647 • Fax 206.587.2648

1   would have placed the additional permit in the envelope she carried and no one would ever

2   have seen it.

3       Based on the foregoing, plaintiff cannot establish a causal nexus between any act or

4   omission on Marlatt's part and plaintiff's alleged injury.

5   DATED:  November 23, 2005.

6   LAW OFFICES OF KEITH M. KUBIK

7

8

9   By _____

10      Keith M. Kubik, WSBA #24218
        Attorney for Defendant
11      Marlatt Mortuary, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MARLATT MORTUARY, INC.'S MOTION
FOR SUMMARY JUDGMENT- 10